
UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION



| | | |
|---|---|---|
| FLANDREAU SANTEE SIOUX TRIBE, a federally-recognized Indian tribe, | * * * | CIV. 07-4040 |
| Plaintiff, | * * | |
| -vs- | * * | MEMORANDUM OPINION AND ORDER |
| STATE OF SOUTH DAKOTA; MICHAEL ROUNDS, Governor of the State of South Dakota; SOUTH DAKOTA COMMISSION ON GAMING; LARRY LONG, South Dakota Attorney General, | * * * * * * * | |
| Defendants. | * * | |

This is a suit by the Flandreau Santee Sioux Tribe ("Tribe") against the State of South Dakota, the South Dakota Commission on Gaming, the Governor of South Dakota and the South Dakota Attorney General. Pending before the Court is Defendants' Motion for Judgment on the Pleadings. (Doc. 101.) The Motion has been thoroughly briefed by the parties. For the following reasons, the motion will be granted in part and denied in part.

## BACKGROUND

The Tribe began operating the Royal River Casino in Flandreau, South Dakota, pursuant to a Tribal State Gaming Compact negotiated with the State in 1990 which permitted 250 slot machines at the Tribe's casino. Under the last Tribal State Gaming Compact executed on December 27, 1999, the Tribe still could not operate more than 250 slot machines on the reservation. The Tribe seeks to eliminate the limit on the number of slot machines and wants to extend the term of the compact for 20 years. The parties began negotiating a new compact in May of 2005, with negotiation sessions held on six occasions between December 30, 2005, and January 11, 2007. The Tribe brought this

action for declaratory and injunctive relief against the State of South Dakota, Governor Michael Rounds, the South Dakota Commission on Gaming, and Attorney General Larry Long ("State"). The Tribe alleges that the State has violated various provisions of the Indian Gaming Regulatory Act ("IGRA") by failing to negotiate in good faith with the Tribe for purposes of entering into a Tribal-State compact for conducting class III gaming on the Tribe's reservation.[1] The Tribe also asserts state and federal equal protection claims, alleging that the defendants give preferential treatment to gaming operators other than the Tribe.

The State answered, urging that the state and federal equal protection claims are barred by Eleventh Amendment immunity, but admitting that the State had waived its sovereign immunity for the IGRA claim. The State then filed the pending Motion for Judgment on the Pleadings, arguing that: 1) the entire case should be dismissed under Federal Rule of Civil Procedure 12(c) for failure to join all required parties to the IGRA claim; 2) the state and federal equal protection claims should be dismissed for several reasons, including because the State has immunity and the Tribe is not a "person" within the meaning of the Equal Protection Clause of the Fourteenth Amendment; and 3) that the Gaming Commission, Governor and Attorney General should be dismissed for failure to state a claim for which relief can be granted.

## DISCUSSION

A motion for judgment on the pleadings under Rule 12(c) is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). All facts pleaded by the non-moving party are taken as true. *McCormack v. Citibank, N.A.*, 979 F.2d 643, 646 (8th Cir. 1992). "Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law." *Faibisch v. University of Minnesota*, 304 F.3d. 797, 803 (8th Cir. 2002).

---

[1] The IGRA grants jurisdiction to the district courts over "any cause of action initiated by an Indian Tribe arising from the failure of a State to enter into" compact negotiations or to negotiate in good faith. *See* 25 U.S.C. § 2710(d)(6)(B)(I).

2

### A. Required Parties to the IGRA Claim

Federal Rule of Civil Procedure 12(b)(7) provides for dismissal of an action for failure to join an indispensable party under Rule 19. FED.R.CIV.P. 12(b)(7). "The proponent of a motion to dismiss under FED.R.CIV.P. 12(b)(7) has the burden of producing evidence showing the nature of the interest possessed by an absent party and that the protection of that interest will be impaired by the absence." *De Wit v. Firstar Corp.*, 879 F.Supp. 947, 992 (N.D. Iowa 1995). The first inquiry is whether the party not joined meets the criteria of Rule 19(a). *See Rochester Methodist Hosp. v. Travelers Ins. Co.*, 728 F.2d 1006, 1016 (8th Cir. 1984). "If it does not, the inquiry is at an end, and the motion to dismiss for failure to join the party in question must be denied." *Id.*

Rule 19(a)(1) requires joinder of a person subject to service of process whose joinder will not deprive the court of subject matter jurisdiction if:

> **(A)** in that person's absence, the court cannot accord complete relief among existing parties; or
>
> **(B)** that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> (I) as a practical matter impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

FED.R.CIV.P. 19(a).

The State asserts that the Complaint should be dismissed pursuant to Rule 19 because the Tribe has failed to join the other federally-recognized Indian tribes that have gaming operations located in the State of South Dakota. The State argues that the other "gaming" tribes might disagree with the Tribe's request for more slot machines, and might be negatively affected by a "diluted market value" if the State increases the number of slot machines the Tribe is allowed to operate in Flandreau. In support of its position, the State relies in part on three separate California district court

3

cases. In those cases, the plaintiff tribes sought relief regarding the maximum number of slot machines the tribes could operate. Ruling that other tribes that were signatories to gaming compacts with the State were required parties that could not be joined because of their tribal sovereign immunity, the district courts dismissed the cases. Two of those California district court cases have been reversed by the Ninth Circuit.[2] *See Cachil Dehe Band of Wintun Indians of the Colusa Indian Community v. California*, 547 F.3d 962 (9th Cir. 2008) ("*Colusa*"); *Rincon Band of Luiseno Mission Indians of the Rincon Reservation v. Schwarzenegger*, 2008 WL 3822538 (9th Cir. Aug. 8, 2008) ("*Rincon*"). The State recently filed a supplemental brief arguing that the Ninth Circuit wrongly concluded the absent tribes were not required parties.

The Court finds the Ninth Circuit's analysis instructive in determining whether the other South Dakota "gaming" tribes are required parties in this case. The background of the Ninth Circuit's *Colusa* and *Rincon* decisions began in 1999 when sixty-three tribes executed virtually identical compacts with the State of California. The California Compacts limit the number of gaming devices operated by each tribe to 2,000. The Compacts establish a threshold number of devices that tribes may operate without a license. For example, Colusa is allowed to operate 523 gaming devices without a license, and needs a license for each device over that number. The California Compacts also establish a formula setting a statewide maximum number of gaming devices that all Compact Tribes may license in the aggregate. These licenses are distributed among the Compact Tribes who apply for them pursuant to a complicated draw process. Colusa applied for and obtained 250 licenses in the State's 2002 draw. In 2003, Colusa requested 377 licenses and received none. After applying for 341 licenses in 2004, Colusa received only 73 licenses in the draw. After unsuccessful negotiations with the State, Colusa filed an action in federal district court. In its complaint, Colusa asserted five claims against the State based on breach of the Compact. The first four claims challenged different aspects of the licensing process. In its fifth claim, Colusa asserted that the State failed to negotiate in good faith. The State filed a motion for judgment on the pleadings, seeking to dismiss Colusa's first, second, third, and fourth claims for failure to join

---

[2]The parties have not advised the Court whether the third case was appealed to the Ninth Circuit.

4

necessary and indispensable parties, and its fifth claim (failure to negotiate in good faith) for failure to exhaust non-judicial remedies.[3] The district court granted the State's motion to dismiss all five claims, and entered judgment in its favor. The Ninth Circuit reversed.

The Ninth Circuit agreed with the district court that some of the absent tribes may prefer that the State issue fewer licenses, but "the absent tribes' only interest relevant for Rule 19(a) purposes is freedom from competition." *Id.* at 971. "The mere fact that the outcome of Colusa's litigation may have some financial consequences for the non-party tribes is not sufficient to make those tribes required parties, however." *Id.* The Ninth Circuit disagreed with the State of California's assertion that the non-party tribes were required parties because their absence would expose the State to a significant risk of "inconsistent obligations" under Rule 19. *See id.* at 972 n.12. Noting the difference between "inconsistent obligations" and "inconsistent adjudications," the Ninth Circuit stated that the possibility that the litigation would result in the State being required to adhere to different interpretations of the Compacts in its dealing with different tribes does not rise to the level of creating a "'substantial risk' of incurring 'inconsistent obligations.'" *Id.* at 976. The Ninth Circuit reversed the district court's dismissal of the *Colusa* case. For the same reasons stated in the *Colusa* opinion, the Ninth Circuit also reversed the district court's dismissal in *Rincon. See Rincon*, 2008 WL 3822538 at * 1 ("In [*Colusa*], we held that an Indian tribe that is party to a 1999 Compact with California may proceed to litigate the size of the total license pool without joining other compacting tribes, because those tribes have no protectable interest in the size of the license pool that qualifies them as required parties within the meaning of Rule 19(a). That ruling controls the present appeal of Rincon's declaratory judgment claim. Accordingly, we reverse the decision of the district court and remand this claim for further appropriate proceedings.")

For similar reasons, this Court finds that the other South Dakota "gaming" tribes are not required parties to the pending action. Under the IGRA, the relief that this Court may grant the Tribe

---

[3]On appeal, the Ninth Circuit said that Colusa had abandoned its failure to negotiate claim by failing to address it on appeal, and the district court's dismissal of that claim was affirmed. *Colusa*, 547 F.3d at 968 n.3.

5

if it finds the State negotiated in bad faith is limited to directing the State and the Tribe to conclude a compact within sixty days. Thus, complete relief to the Tribe concerning the Compact is possible in the absence of the other "gaming" tribes. In addition, the absent tribes claim no interest in the Compact of the Flandreau Santee Sioux Tribe, which is the subject matter of this case. The State's argument that those tribes might suffer a financial loss if the Flandreau Santee Sioux Tribe is allowed more than 250 slot machines is mere speculation and does not persuade the Court that the tribes are required parties. The State can and does negotiate separately with each tribe regarding the terms of its compact with the State. During negotiations, each tribe has the ability to advocate its interests, and the State has the opportunity to evaluate the proper number of slot machines for each tribe. Furthermore, if the compact negotiations with each tribe lead the State to agree on different numbers of slot machines for different tribes, that would not be "inconsistent obligations" for purposes of Rule 19(a).

For these reasons, the absent "gaming" tribes do not meet the requirements of a necessary parties under Rule 19(a), and the motion to dismiss based on Rule 19 will be denied.

## B. Eleventh Amendment Immunity

1. State of South Dakota

The State asserts that Eleventh Amendment Immunity prohibits the equal protection claim filed against it by the Tribe.[4] The Eleventh Amendment of the United States Constitution provides that:

---

[4]The State agrees that it has waived its sovereign immunity as to the IGRA claim. The 1999 Gaming Compact between the State of South Dakota and the Tribe provides at paragraph 12.2 that disputes arising out of the Compact may be heard in an action in federal district court. Paragraph 12.9 provides, however, that "This Compact shall not be construed to waive or diminish the sovereign immunity of the Tribe or the State of South Dakota, except as specifically provided by the provisions of 12.2." The Tribe does not argue that the State's limited waiver of immunity for the IGRA claim also waives its Eleventh Amendment immunity for the equal protection claims. Such an argument would be rejected. *See Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685-686 (1983) ("Waivers of immunity must be construed strictly in favor of the sovereign, and not enlarge[d] ... beyond what the language requires.")(internal citations and quotations omitted).

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against any one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. The Amendment has been interpreted to protect an unconsenting "State or one of its agencies or departments" from suit in federal court by its own citizens as well as those of another state. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). The Supreme Court has recognized two exceptions to the Eleventh Amendment immunity for the States and their agencies.

> While this immunity from suit is not absolute, we have recognized only two circumstances in which an individual may sue a State. First, Congress may authorize such a suit in the exercise of its power to enforce the Fourteenth Amendment-an Amendment enacted after the Eleventh Amendment and specifically designed to alter the federal-state balance. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). Second, a State may waive its sovereign immunity by consenting to suit. *Clark v. Barnard*, 108 U.S. 436, 447-448, 2 S.Ct. 878, 27 L.Ed. 780 (1883).

*College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999).

The Tribe does not rely on either of these two recognized exceptions to Eleventh Amendment immunity. The Tribe relies on an unrecognized exception, asserting that by ratifying the Constitution the states surrendered all sovereignty over the entire subject area of Indian affairs. According to the Tribe, this complete surrender of sovereignty included a surrender of the states' ability to assert sovereign immunity. The Tribe admits that courts have never addressed this novel argument. The Court declines the Tribe's invitation to recognize such an exception to the State's Eleventh Amendment immunity at this time.

Because the Tribe has not shown that either of the exceptions to the Eleventh Amendment are applicable, the Tribe's equal protection claims are barred against the State of South Dakota.

## 2. Individual Defendants

The Tribe also brought this suit against Governor Michael Rounds and Attorney General Larry Long, alleging that the Governor has the authority to execute tribal-state compacts governing the conduct of Class III gaming on Indian lands, and that the Attorney General's office represents the State and the South Dakota Commission on Gaming in compact negotiations and is the chief legal advisor to the Governor. It is alleged that the Governor and Attorney General give preferential treatment to gaming operators other than the Tribe.

The Tribe argues that its constitutional claims may proceed against the individual defendants pursuant to *Ex Parte Young*, 209 U.S. 123 (1908). In *Ex parte Young*, the Supreme Court held that the Eleventh Amendment does not preclude suits for prospective injunctive relief brought against government officials who are charged with violating federal law. The applicability of *Ex parte Young* has been tailored by the Supreme Court "to conform as precisely as possible to those specific situations in which it is necessary to permit the federal courts to vindicate federal rights and hold state officials responsible to the supreme authority of the United States." *Papasan v. Allain*, 478 U.S. 265, 277 (1986) (citing *Pennhurst*, 465 U.S. 105). The *Ex parte Young* exception to Eleventh Amendment immunity was limited by the Supreme Court in *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996), where the Court held that the existence of the detailed remedial scheme of the IGRA shows Congressional intent to prohibit recourse under *Ex parte Young*. The plaintiffs in *Seminole Tribe* brought their *Ex parte Young* suit against the governor of Florida, seeking injunctive relief to compel negotiation of a tribal gaming compact. The Court refused to apply *Ex parte Young*, reasoning that it was unavailable because the statute included a "carefully crafted and intricate remedial scheme" that greatly circumscribed the powers of the federal district court in cases arising under the statute's provisions.[5] *Seminole Tribe*, 517 U.S. at 73-76. By limiting the district

---

[5]The IGRA's remedial scheme prescribes the role of the courts in resolving disputes between the tribes and the states, and severely limits that role. *See* 25 U.S.C. § 2710(d)(3) (dispute resolution provision). Specifically, if compact negotiations fail and the parties go to court, the statute provides that, upon a finding that the state failed to negotiate in good faith, the only relief the court may grant is to issue an order directing the state and the tribe to conclude a compact within sixty days. At that point, if the parties disregard the court's order, the court has no further power to hold the parties in

court's powers in such a fashion, "Congress chose to impose upon the State a liability that is significantly more limited than would be the liability imposed upon the state officer under *Ex parte Young*" and thus indicated its intent to foreclose *Ex parte Young* actions. *Seminole Tribe*, 517 U.S. at 75-76. Allowing a suit directly against the Governor, the Court reasoned, would effectively render the statutory scheme superfluous. *Id.* at 75. The Court reasoned that given a choice between the limited relief under the IGRA and the full remedial powers of the federal courts under *Ex parte Young*, the natural choice would be to choose the latter "more complete and more immediate relief." *Id.* at 75-76. The Supreme Court also held that Congress did not have the constitutional power to abrogate states' Eleventh Amendment immunity. Thus, the tribe was not allowed to use the *Ex parte Young* exception even though it also was precluded from seeking relief from the State under the IGRA.

The Tribe asserts that the limitation of *Seminole Tribe* does not apply in this case because, unlike the plaintiff in *Seminole Tribe*, it has alleged an equal protection claim in addition to the IGRA claim against the Governor and Attorney General. In support of this argument, without much discussion or analysis, the Tribe cites *Papasan v. Allain*, 478 U.S. 265 (1986), where the Supreme Court held that an equal protection claim against state officials was not barred by the Eleventh Amendment. *Papasan* was decided ten years before *Seminole Tribe*, and it is not particularly instructive in this case because *Seminole Tribe* has changed the landscape of Eleventh Amendment immunity. After the Supreme Court's *Seminole Tribe* decision, when analyzing the applicability of *Ex parte Young*, courts began inquiring into whether an applicable federal statutory scheme evidences an implicit or explicit intent to exclude *Ex parte Young* actions. *See, e.g., Union Elec. Co. v. Missouri Dept. of Conservation*, 366 F.3d 655, 658 (8th Cir. 2004) (statutory scheme of Federal Power Act "unmistakably evidences an intent to exclude" action for declaratory relief against the individual defendants, state officials with the Missouri Department of Conservation). *Seminole Tribe's* limitation on *Ex parte Young* is applicable to the present case. The

---

contempt: the statute prescribes that the parties submit their respective versions of the compact to a mediator who then selects a version to become the agreement between the parties. Further disagreements are then referred to the Secretary of the Interior.

Eighth Circuit applied *Seminole Tribe,* holding that *Ex parte Young* was not applicable to a suit by the tribe seeking an injunction against the governor requiring the State of Nebraska to negotiate a compact in good faith with the tribe in accordance with IGRA. *See Santee Sioux Tribe of Nebraska v. State of Neb.,* 121 F.3d 427 (8th Cir. 1997). *Cf. Verizon Maryland, Inc. v. Public Serv. Comm'n of Maryland,* 535 U.S. 635 (2002) (rejecting argument that the Telecommunications Act of 1996 evinced Congressional intent to foreclose *Ex parte Young* relief because, unlike the detailed remedial scheme of the IGRA, the Telecommunications Act provides only that when state commissions make certain "determinations" an aggrieved party may bring suit in federal court; there is no limitation on the kind of relief that may be awarded or the kind of defendants who may be sued).

The Court finds that the comprehensive remedial scheme of the IGRA forecloses application of the *Ex Parte Young* exception to the State's assertion of Eleventh Amendment immunity on behalf of the individual defendants, and the Eleventh Amendment bars this action against Governor Rounds and Attorney General Long.

### 3. South Dakota Commission on Gaming

In its Complaint, the Tribe alleges that the South Dakota Commission on Gaming "is responsible for regulating the gaming industry in the State of South Dakota, including the City of Deadwood, and for engaging in tribal compact negotiations for gaming on Indian reservations pursuant to IGRA on behalf of the State of South Dakota." The Tribe does not allege that the Commission regulates the gaming industry for the Tribe. The State moved for dismissal of the Commission for failure to state a claim, and argues that the Supreme Court's decision in *Seminole Tribe* bars the Tribe's claim against the Commission. In its opposition brief, the Tribe again asserts that the Commission is charged with the authority to enter into compacts involving gaming and that it has denied the Tribe equal treatment by allowing a non-Indian gaming operator to operate 360 slot machines, while the Tribe is only allowed to operate 250.

The parties do not address the issue, but it appears to the Court that the Commission is an agency of the State of South Dakota.[6] As indicated above, Eleventh Amendment immunity applies to state agencies and departments. Thus, the Tribe's equal protection claims against the Commission are barred by the Eleventh Amendment, just as those claims are barred against the State of South Dakota.[7] *See, e.g., Texas Community Bank, N.A. v. Missouri Dept. of Social Services, Div. of Medical Services*, 232 F.3d 942, 943 (8th Cir. 2000) ("State agencies may assert the Eleventh Amendment immunity of the State.").

Section 11(d)(7) of the IGRA grants a tribe the right to sue a state if compact negotiations are not concluded. In its Compact with the Tribe, the State of South Dakota waived its Eleventh Amendment immunity for the IGRA claim. The Commission is not a party to the Compact, and it has not waived its immunity. The State of South Dakota is the proper party for the IGRA claim in this case. The Tribe has not asserted any basis for this Court's jurisdiction over the Commission for the IGRA claim, and the IGRA claim against the Commission will be dismissed.

The Court's conclusion that all defendants are entitled to Eleventh Amendment immunity does away with the need to address the State's argument that the Tribe is not a "person" entitled to protection under the Equal Protection Clause. Because of their Eleventh Amendment immunity, with the exception of the Tribe's IGRA claim against the State of South Dakota, all defendants are entitled to dismissal of the Tribe's claims with prejudice. *See, e.g., Texas Community Bank*, 232 F.3d at 943 (reversing denial of state agency's motion to dismiss based on Eleventh Amendment immunity and remanding for dismissal with prejudice).

---

[6]The Commission was created by South Dakota law. *See* SDCL 42-7B-6. Its five members are appointed by the Governor. *Id.* It is charged with the administrative control of limited card games and slot machines in South Dakota. *See* SDCL 42-7B-7.

[7]It is not clear to the Court why the parties argue whether or not the *Ex parte Young* exception applies to the Commission. The Tribe names no individual officers on the Commission. The *Ex parte Young* exception applies only to actions against individual state officers, not to state agencies. Therefore, the *Ex parte Young* exception to Eleventh Amendment immunity is inapplicable to the Commission.

11

The Tribe also asserts that the state equal protection claim survives under the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because that claim shares a "common nucleus of operative fact" with the Tribe's IGRA claim.[8] That argument fails in light of this Court's holding that the Eleventh Amendment bars the Tribe's equal protection claims against the defendants. A federal district court's jurisdiction over a claim does not abrogate a state's Eleventh Amendment immunity. *See, e.g., Standing Rock Sioux Indian Tribe v. Dorgan*, 505 F.2d 1135, 1137-38 (8th Cir.1974) ("[W]here properly invoked, the Eleventh Amendment bars the action regardless of the statutory basis of jurisdiction."); *Los Angeles Branch NAACP v. Los Angeles Unified School Dist.*, 714 F.2d 946, 950 (9th Cir.1983) ("Neither 28 U.S.C. § 1331, nor § 1343, nor 42 U.S.C. § 1983 contains an expression of Congressional intent to abrogate [the States'] immunity. Therefore none operates to lift the Eleventh Amendment bar."). For all of these reasons,

IT IS ORDERED:
1. That Defendants' Motion for Judgment on the Pleadings, doc. 101, is granted in part and denied in part. It is denied as to the IGRA claim against the State of South Dakota. It is granted to the extent that the Tribe's equal protection claims are dismissed, and the South Dakota Commission on Gaming, Governor Rounds and Attorney General Long are dismissed as defendants from this case with prejudice.

2. That the caption in this case is amended as follows:

   FLANDREAU SANTEE SIOUX TRIBE
   a federally-recognized tribe,

           Plaintiff,
   vs.

   STATE OF SOUTH DAKOTA,

           Defendant.

---

[8]Section 1367 of United States Code, Title 28, provides:
[I]n in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C.A. § 1367.

Dated this 30 day of March, 2009.

BY THE COURT:

/s/ Lawrence L. Piersol
Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: /s/ Summa Wahu
(SEAL)         DEPUTY

13