FILED
OCT 29 2010
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

****************************************************************************

FLANDREAU SANTEE SIOUX TRIBE, a federally-recognized Indian tribe,

Plaintiff,

vs.

STATE OF SOUTH DAKOTA,

Defendant.

CIV. 07-4040

ORDER

****************************************************************************

Pending is the Tribe's motion for protective order.[1]

## BACKGROUND

This case has been pending since March 19, 2007.[2] Since September of 2005, the parties have failed after repeated sparring to agree to a new compact.[3] The old compact expired in June, 2006.[4] The State represents that "class III gaming should only occur under a tribal-state compact."[5] If that is true, then it appears the Flandreau Santee Sioux Tribe has been operating its class III gaming without legal authority for more than four years and the State has been condoning the unauthorized operation.

---

[1]Doc. 178.

[2]Doc. 1.

[3]Doc. 186, pp. 2-4, 8-9. The word compact is similar, if not synonymous, with contract.

[4]Doc. 186, p. 3, fn 4.

[5]Doc. 186, p. 5, citing *American Indian Law Deskbook,* p. 416 and 25 U.S.C. § 2710(d).

Like ships passing in the night, the State argues about public policy while the Tribe argues about Deadwood. Meanwhile, neither party is willing to compromise about the other's core issues, but both posture to show they are acting in good faith.[6] It's time to end the sparring and either agree to a new compact or try the case. The core negotiating issues for the Tribe are the number of slot machines and the length of the compact.[7] The core negotiating issues for the State are jurisdiction and waiver of sovereign immunity.[8] The State won't budge about the number of slot machines and has been reluctant to increase the length of the compact.[9] The State has offered a four year compact. The Tribe won't budge about jurisdiction or sovereign immunity.[10] The State believes the Tribe's negotiating position is that the State should capitulate to the Tribe's demands.[11]

The Tribe started in 1990 with a limit of 180 slot machines against which its card tables counted. Now it is entitled to 250 slot machines, but the card tables do not count against the 250 machines. The existing and previous compacts were for a term of 3 years.[12]

The State noticed a Rule 30(b)(6) deposition. The Tribe moved to quash certain parts of the noticed deposition, including one which would require the Tribe to produce financial information. The State argues it needs the financial records so it can learn how much money the Tribe makes on

---

[6]This Judge acted as mediator in August of 2007 during one of the failed negotiation sessions and has considered two previous discovery disputes.

[7]Doc. 186, p. 2..

[8]Doc. 186, p. 3.

[9]Doc. 186 generally and the absence of mention.

[10]Doc. 186, p. 3.

[11]Doc. 186, p. 9.

[12]Doc. 186, p. 6-8.

its gaming and how much each member of the Tribe receives from the gaming. The State argues it needs to learn why two financial institutions refused to loan money to the Tribe to expand to become a destination resort and it needs to learn how much money each Tribe member receives so the State can compare the amount with other persons in South Dakota. The State argues that finances of the Tribe are among the subjects listed in IGRA[13] for negotiating a compact. The State argues also that if the Tribe demonstrates at trial a prima facie case that the State has negotiated in bad faith, then the Tribe's financial information is necessary so the State can satisfy its burden to prove that it has negotiated in good faith.

The Tribe argues its financial information is not relevant to a claim or defense in the lawsuit and that its financial information is confidential.

## DECISION

The statute[14] lists the subjects which may be negotiated. None of the seven listed subjects is financial. Another part of the statute[15] allows the court to consider financial integrity, among other matters, when the court decides whether the State has negotiated in good faith. But the Tribe's financial integrity has not been an issue in this lawsuit. To support its claim of entitlement to the Tribe's financial information the State argues:

> During the Compact negotiations, the Tribe alleged they were unable to get financial backing for their destination resort based upon the current Compact. The Tribe offered two letters from financial institutions as exhibits, claiming that due to the terms of the Compact, that it would be difficult for the Tribe to secure financing. In order to investigate this claim, that the Tribe is unable to secure financing, the State

[13] Indian Gaming Rights Act.

[14] 25 U.S.C. § 2710(d)(3)(A).

[15] 25 U.S.C. § 2710(d)(7)(B)(iii)(I).

> needs to see the financial records, documentation, and have someone from the Tribe explain what funds the Tribe receives from gaming and how they are used.[16]

Two issues exist with the State's proposition. First, if the financial institutions won't lend money to the Tribe, the place to learn why is from those lenders. Second, the State's own assertion is that the lenders would not lend the money to the Tribe because of the *terms of the compact*. Notably, the terms of the compact do not include the Tribe's financial information.

Finally, the State argues both (1) that it needs the Tribe's financial information to be ready to satisfy its potential burden to prove it negotiated in good faith, and (2) that the Tribe's discovery of financial information from other Tribes justifies the State to explore the financial affairs of the Flandreau Santee Sioux Tribe. The Court disagrees. The State does not need to know the Tribe's financial affairs to prove the State negotiated for a new compact in good faith. Likewise, if for some reason there has been discovery about the financial affairs of other Tribes, it does not follow *ipso facto* that the financial affairs of the Flandreau Santee Sioux Tribe are discoverable. As explained before, so far they are not.

The Tribe's argument about producing any and all documents is that it is a request "akin to a request that the Tribe produce anything that has to do with gaming.[17] Not so. The deposition notice says "produce any and all documents . . . not already provided in discovery, *regarding each of the below topics.*"[18] Other than the financial affairs of the Tribe, the topics noticed for the Rule

---

[16]Doc. 186, pp. 12-13 (internal citation to the record omitted).

[17]Doc. 179, p. 7 the word "produces" changed to "produce."

[18]Doc. 182-3, p. 5 of 7.

30(b)(6) deposition are directly related to the claims and defenses in the lawsuit. It was the Tribe itself who listed 122 potential witnesses on its initial disclosures.

**ORDER**

It is ORDERED:

Pursuant to Federal Rule of Civil Procedure 26(c)(1)(A) thru (D) & (G) the Tribe's motion for a protective order (Doc. 178) is GRANTED as follows:

The State's notice of a Rule 30(b)(6) deposition from the Tribe is quashed to the extent the Tribe's financial affairs is a subject. If after conducting other discovery the State believes it needs discovery about the financial affairs of the Tribe, the State may move for permission, but must support the motion with good cause. Specifically, Topic III of the notice of deposition is quashed.

The Tribe's motion for protective order is DENIED in all other respects. This Order allows the Tribe to assert privilege objections.

Dated October 29, 2010.

BY THE COURT:

John E. Simko
United States Magistrate Judge