UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

******************************************************************************

|  |  |  |
|---|---|---|
| FLANDREAU SANTEE SIOUX TRIBE, | * | CIV.  07-4040 |
| a federally-recognized Indian tribe, | * | |
| | * | |
| Plaintiff, | * | |
| | * | ORDER ON MOTION TO QUASH |
| vs. | * | SUBPOENA (DOC. 197) |
| | * | |
| STATE OF SOUTH DAKOTA, | * | |
| | * | |
| Defendant. | * | |
| | * | |

******************************************************************************

Pending is the State's motion to quash the Tribe's notice to take the deposition of Governor Michael Rounds.[1]  The State argues former Governor Rounds[2] is a high ranking government official whose deposition cannot be taken absent extraordinary circumstances.[3]  The State also argues that conversations among the former Governor and staff are protected from discovery by the deliberative process privilege.[4]  The Tribe argues Governor Rounds is the only source for the particular information they need to prove their case and the deliberative process privilege does not apply.[5]

**BACKGROUND**

---

[1]Doc. 197.

[2]Doc. 198-1.  Governor Rounds' term of office ended January 8, 2011.

[3]Doc. 198, p. 1.

[4]Doc. 198, p. 1.

[5]Doc. 201, p. 2.

Former Governor Rounds has filed an affidavit[6] in which he says that he designated Larry Eliason to negotiate class III gaming contracts with South Dakota Indian tribes pursuant to the Indian Gaming Regulatory Act (IGRA). Rob Skjonsberg, Chief of Staff, was the primary person of contact for Larry Eliason. Governor Rounds did not personally attend the negotiating sessions. The State asserts that Governor Rounds possesses no pertinent first hand information and that all of his information comes through Rob Skjonsberg from Larry Eliason. According to the State,[7] Governor Rounds does not possess any information that cannot be obtained from either Rob Skjonsberg or Larry Eliason. Furthermore, the State argues that relevant evidence by definition excludes any evidence not part and parcel of the negotiating sessions. The State argues that Governor Rounds does not possess relevant evidence. Furthermore, deliberations and documents that guide or inform the decisions of the State's policy makers are protected by the deliberative process privilege.[8]

The Tribe argues that Governor Rounds is the ultimate decision maker for the State about the gaming compact.[9] According to the Tribe, with little or no explanation Governor Rounds has been unwilling to sign a compact which contains terms acceptable to the Tribe.[10] The Tribe argues that as the ultimate decision maker for the State, Governor Rounds is a witness with unique personal knowledge about the State's reasons for refusing to sign a compact. The Tribe proposed a compact

---

[6]Doc. 198-1.

[7]Doc. 198, p. 6-7.

[8]Doc. 198, pp. 7-9.

[9]Doc. 201, p. 1.

[10]Doc. 201, p. 2.

which allowed 1500 gaming devices compared to 250 under the most recent compact, but the State without explanation refused to agree.[11] The Tribe asserts Governor Rounds was personally involved in reviewing compact proposals and promoting his policy positions during six unsuccessful negotiating sessions. The Tribe suggests that Governor Rounds has written letters to the Tribe and others in which he says he is fully informed of the progress of the negotiating sessions, and that he has seen nothing which alleviates his concerns about the impact on the State's revenue if the Tribe operates more than 250 machines.[12] The Tribe asserts that it carries the burden to prove the State has not negotiated in good faith, so it is necessary for the Tribe to learn from Governor Rounds why he will not agree to the Tribe's proposals.[13]

## ANALYSIS

**Indian Gaming Regulatory Act (IGRA).**

Some background beyond the discovery rule of the Federal Rules of Civil Procedure is a necessary predicate to the analysis of this dispute. The centerpiece for analysis of this case is IGRA.[14] Under IGRA class III gaming can be conducted only if, among other matters, it is conducted within a State which permits such gaming and is conducted in conformance with a Tribal-State compact that is in effect.[15] A Tribal-State compact may include provisions relating to seven subjects:

---

[11]Doc. 201, p. 6.

[12]Doc. 201, p. 7.

[13]Doc. 201, p. 8.

[14]Specifically, the part of IGRA found at 25 U.S.C. § 2710(d).

[15]25 U.S.C. § 2710(d)(1)(B) & (C).

1.      Application of criminal and civil laws and regulations that are directly related to and necessary for licensing and regulation of pertinent gaming activities.

2.      Allocation of criminal and civil jurisdiction for the enforcement of those laws and regulations.

3.      An assessment of gaming activities in such amounts as are necessary to defray the costs of regulating the gaming activities.

4.      Taxation of the gaming activities by the Tribe in amounts comparable to amounts assessed by the State for comparable activities.

5.      Remedies for breach of contract.

6.      Standards for the operation of gaming and maintenance of the gaming facility, including licensing.

7.      And other subjects that are directly related to the operation of gaming activities.[16]

The United States district courts are vested with jurisdiction over lawsuits commenced by an Indian tribe arising from the failure of a State to enter into negotiations with an Indian tribe for a Tribal-State compact or to conduct negotiations in good faith.[17]   If in the lawsuit the Indian tribe demonstrates that the Tribal-State compact has not been entered into and that the State did not respond to the request to negotiate or that the State did not respond in good faith, then the burden shifts to the State to prove that it has negotiated with the Indian tribe in good faith.[18]  Despite IGRA,

---

[16]25 U.S.C. § 2710(d)(3)(C)(1) -(vii).

[17]25 U.S.C. § 2710(d)(7)(A)(i).

[18]25 U.S.C. § 2710(d)(7)(B)(ii)(I) & (II).

4

the federal courts do not have jurisdiction unless the State has waived Eleventh Amendment immunity.[19]  South Dakota has waived immunity under IGRA.[20]

**Good Faith Not Defined.**

The purpose of the Tribe's lawsuit is to determine whether the State has conducted negotiations for a Tribal-State compact in good faith.[21]  IGRA does not define good faith.  But IGRA does suggest what the court can consider when deciding whether the State has negotiated in good faith:[22]

- may consider public interest, public safety, criminality, financial integrity, and adverse economic impacts on existing gaming activities;

- shall consider any demand by the State for direct taxation of the Tribe.

**Evidence to be Evaluated.**

More Than The Bare Record Is Reviewed.  In 1993 Judge Jones decided in the *Cheyenne River Sioux* case that only the transcripts of the negotiating sessions would be reviewed to judge whether the State had negotiated in good faith.[23]  It was Judge Jones' view in *Cheyenne* that the

---

[19]*Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114 (1996).

[20]Doc. 147, p. 6, fn 4.  "The State agrees that it has waived its sovereign immunity as to the IGRA claim. The 1999 Gaming Compact between the State of South Dakota and the Tribe provides at paragraph 12.2 that disputes arising out of the Compact may be heard in an action in federal district court."

[21]25 U.S.C. § 2710(d)(7)(A)(i).

[22]25 U.S.C. § 2710(d)(7)(B)(iii)(I) & (II).

[23]*Cheyenne River Sioux Tribe v. State of South Dakota, et al*, 830 F.Supp. 523, 527 (D.S.D. 1993).

posturing by the parties which was reflected in their conversations, letters, and press releases was not to be considered.  But, in this case Judge Piersol has allowed limited discovery outside of the transcripts.[24]  Judge Piersol explained:

> Whether or not discovery is warranted is normally dependent upon the facts of the case and the claims of the parties. Here, Defendants claim, among other things, that the State of South Dakota has a long standing policy of limited gaming, which policy has been a basis for the State's positions in the compact negotiations. The Tribe contends that the State has not followed such a policy on non-Indian gaming. As a result, the Tribe claims that what gaming policy the State has followed bears upon whether or not the State negotiated with the Tribe in good faith. The conflicting claims coupled with the fact that the Tribe has a significant burden to meet in attempting to show a lack of good faith on the part of the State, require that in this case discovery be allowed. Facts and circumstances outside of the actual transcript of the negotiations may be relevant in aiding the Court in its determination of whether or not the State negotiated in good faith.

Evidence outside of the negotiating sessions is discoverable under Judge Piersol's discovery order.

  But There Is Not A Review Of The State's Subjective Intent.  The Ninth Circuit provides instruction about discovery under IGRA, but according to the State of California the most pertinent case was wrongly decided.[25]  There is a pending Petition for Certiorari in the United States Supreme Court.[26]  The scope of review of the State's good faith under IGRA is not among the questions

---

[24]Doc. 41.

[25]*Rincon v. Schwarzenegger*, 602 F.3d 1019 (9th Cir. 2009); *Big Lagoon Rancheria v. State of California*, 2010 WL 2350483 (N.D.Cal.); *Big Lagoon Rancheria, v. State of California*, 2010 WL 2735567 (N.D.Cal.); *Big Lagoon Rancheria v. State of California*, 2010 WL 4916416 (N.D.Cal.).

For clarity the *Big Lagoon* cases are referred to as *Big Lagoon* #1, #2, and #3.

[26]*Edmund G. Brown, Jr. v. Rincon*, 10-330.  On December 13, 2010, the Supreme Court filed an Order inviting the Acting Solicitor General to file briefs expressing the views of the United States.

presented in the Petition for Certiorari.[27]  The issues described in the petition are divided into

categories A and B.  Category A asserts there are recurring issues "concerning the permissible scope

of tribal-state negotiations under IGRA. . . ." [28]  But unlike today's case the Petition reveals

objective versus subjective review is not directly questioned.  Rather, the questions posed in the

Petition are (1) whether revenue sharing is a fair subject for negotiation despite the statute's

expressed ban against negotiating for a direct tax on the Tribe, and (2) whether it was error for the

Ninth Circuit to weigh the relative value of concessions offered by the parties.[29] California

complains the court

> did not attempt to determine whether the State's conduct of negotiations was a
> sincere effort to reach agreement or was a charade, or sham.  Instead, after
> erroneously concluding that the State had demanded direct taxation of the Tribe, the
> majority looked to the relative value of the concessions the State offered in exchange
> for general fund revenue sharing.  But this inquiry has little relevance to whether the
> State engaged in a sincere effort to reach agreement. . . .  To the contrary, this
> valuation is, in the first instance, left expressly between the two equal sovereigns.[30]

*Rincon's* rule is that good faith should be judged based on the objective record of

negotiations, and that a State's subjective intent is not considered.[31]

> However, we are influenced by the factors outlined in § 2710(d)(7)(B)(iii), which
> lend themselves to objective analysis and make no mention of unreasonable beliefs.
> Further, the structure and content of § 2710(d) make clear that the function of the
> good faith requirement and judicial remedy is to permit the tribe to process gaming

---

[27]210 WL 3511823.

[28]*Id*. at *1.

[29]*Id*.

[30]*Id*. at *27 (internal citations, brackets, and quotation marks omitted).

[31]*Rincon* at 1041, and *Big Lagoon #1,* 2010 WL 2350483 at *1.

arrangements on an expedited basis, not to embroil the parties in litigation over their subjective motivations.[32]

*Rincon's* instruction is to exclude the State's state of mind and motives from the review for good faith.[33]  Additionally, the review for good faith "is one that takes into account all of the facts and circumstances, not just the bare record of negotiations between the parties."[34]  Having in mind that discovery outside the bare record of negotiations is appropriate and that the State's  state of mind and motives are not a part of judging the State's good faith, the analysis now turns to the deposition of former Governor Rounds.

### Governor Rounds' Deposition.

<u>Subjective Versus Objective</u>.  The boundary line between that which is discoverable and that which is not discoverable is marked by the boundary line between objective facts and subjective intent.  Objective facts are discoverable.  Subjective motives, beliefs, and intent are not.[35]  Only limited resort to the tests suggested by the State is necessary to resolve this dispute.  One test suggested by the State is to determine when it is appropriate to depose a high ranking government official.[36]  The other test suggested by the State is to determine when the deliberative process

---

[32]*Rincon* at 1041.

[33]See also *Fort Independence Indian Community v. Schwarzenegger*, 2009 WL 1283146, *4 (E.D. Cal.).

[34]*Big Lagoon #1,* 2010 WL 2350483 at *2.

[35]*Rincon* at 104.  See also *Fort Independence Indian Community v. California,* 2009 WL 1283146 (E.D. Cal.).

[36]*United States v. Morgan*, 313 U.S. 409, 421-22 (1941) for the doctrine.

Doc. 198, citing *Thomas v. Cate,* 715 F.Supp.2d 1012, 1049 (E.D. Cal. 2010)(citations

privilege can be overcome.[37]   The deliberative process privilege relates to *documents* and is established under Exception 5 of the Freedom of Information Act. Near the end of this opinion taking testimony from a high ranking government official is addressed.  It is not necessary to address the deliberative process privilege further.

The Tribe does not wish to depose Governor Rounds about any of the objective matters described in the statute.[38]  Instead the Tribe argues "the State's *intent* is at issue in this case."[39]  They assert "Mr. Rounds has '*direct personal factual information* pertaining to material issues in an action' and the information he possesses is not reasonably available from any other source."[40]  The Tribe refers to letters written by Governor Rounds in which he says he is fully informed about the negotiations and that he has enjoyed working with "President Allen and other tribal leaders on this matter."[41]  They refer to other discovery which indicates Governor Rounds was involved in numerous internal meetings and gave instructions to his administration about the Tribe's proposals.[42]

---

omitted). *See also Arnold Agency v. West Virginia Lottery Commission*, 526 S.E.2d 814, 829 (Va. Ct. App. 1999); and *Horne v. School Board of Miami-Dade County*, 901 So.2d 238, 240 (Ct. Ap. Fl. 2005) for the test.

[37]*Mapother v. Department of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993); *First Eastern Corp. v. Mainwaring,* 21 F.3d 465, 468 (D.C. Cir. 1994)(citations omitted) for the doctrine.

*Federal Trade Commission v. Warner Communications*, 742 F.2d 1156 (9th Cir. 1984)(citing *NLRB v. Sears, Roebuck & Co.* 421 U.S. 132, 150 (1975)) for the test.

[38]25 U.S.C. § 2710(d)(3)(C)(1)-(VII) or 25 U.S.C. § 2710(d)(7)(B)(iii)

[39]Doc. 201, p. 2.

[40]Doc. 201, p. 5 (italics in original).

[41]Doc. 201, p. 7.

[42]Doc. 201, p. 8.

It is asserted by the Tribe that "Mr. Rounds' *motivations* throughout the compact negotiation process are highly relevant to this litigation."[43]  "The *impetus behind* Mr. Rounds' decisions are important evidence" for the Tribe to fulfill its burden to show the State did not respond in good faith.[44]  The Tribe argues "The Tribe is entitled to discover *the basis for Mr. Rounds' decision* for refusing to agree to the Tribe's proposals."[45]

> No one else can explain the Governor's *motivations* and positions as to the negotiations with the Tribe; no one else can identify as well as Governor Rounds the alternative proposals he considered, and no adopt else can better explain *his reasons* for not approving proposals submitted by the Tribe.[46]

The Tribe also argues it needs to question Governor Rounds about statements he made, letters he wrote, and campaign positions he espoused about limited gambling being public policy in South Dakota.[47]

> Mr. Rounds is the only person that possesses first-hand knowledge as to the *impetus* of his decisions concerning the Tribal-State Compact negotiations.  Under IGRA, as explained further herein, whether the State has negotiated in good faith *is a* ***subjective*** *question of intent.*  Here, the Tribe *does not seek to inquire simply into "what" Governor Rounds did* that may have resulted in bad faith, but also seeks Mr. Rounds *rationale* in refusing to accept any of the Tribe's compact proposals.  Such an inquiry requires the actual testimony of the decision maker.[48]

The Tribe also argues the State itself has placed the Governor's *intent* at issue.[49]

---

[43]Doc. 201, p. 8 (italics added for emphasis).

[44]Doc. 201, p. 9 (italics added for emphasis).

[45]Doc. 201, p. 9 (italics added for emphasis).

[46]Doc. 201, p. 9-10 (italics added for emphasis).

[47]Doc. 201, p. 10.

[48]Doc. 201, p. 11 (italics and bold added for emphasis).

[49]Doc. 201, p. 14.

From all of these assertions by the Tribe it is quite evident the Tribe believes the State's subjective motivation is to be reviewed for good faith, i.e. the State's motives and reasons for its decisions not to agree to proposals made by the Tribe.  This very issue was addressed in *Big Lagoon #2*:[50]

> The language of the *Rincon* decision makes one point clear: the subjective motivations of the parties are not relevant to the good faith determination.

Even if it is true that the State itself has made intent an issue, which is disputed by the State, that is not enough to expand the good faith evaluation to include subjective motives or beliefs in the good faith evaluation.[51]  The review is limited to objective facts.[52]

High Ranking Government Official.  There is a five part test about allowing the deposition of a high ranking official:

(1)    the official's testimony is necessary to obtain relevant information that is not available from another source;

(2)    the official has first hand information that cannot reasonably be obtained from other sources;

(3)    the testimony is essential to the case at hand;

(4)    the deposition would not significantly interfere with the ability of the official to perform his government duties; and

---

[50]*Big Lagoon #2*, 2010 WL 2735567 at *5, citing *Rincon* 602 F.3d at 1041.

[51]*Rincon* at 1041.

[52]*Fort Independence Indian Community v. California*, 2009 WL 1283146, * 3 (E.D. Cal.)

(5) the evidence sought is not available through less burdensome means or alternative sources.[53]

If the good faith evaluation were to include subjective intent and motives, the results of this test would come down on the side of allowing Governor Rounds' deposition. But the good faith evaluation is based upon objective facts. When the test is applied to objective facts, the results come down on the side of not allowing Governor Rounds' deposition.

- First, the Tribe wants evidence about underlying reasons for refusing to agree to the Tribe's proposals, i.e. matters of subjective considerations. Subjective matters are not relevant because the good faith evaluation is based upon objective facts. These objective facts are available from sources other than a deposition from the Governor.

- Second, if subjective matters could be considered, Governor Rounds would have first hand information about his refusal to agree to the Tribe's proposals. But about objective facts his information is no better than that of others, and the objective facts are available from other sources.

- Third, Governor Rounds' testimony is not essential to ascertaining the objective facts. The only facts the Tribe asserts it needs to learn from Governor Rounds are subjective matters.

- Fourth, without regard to whether Governor Rounds is the sitting or former governor, the deposition could be arranged so that it would not significantly interfere with the affairs of government. The proposed deposition is limited in time to one day of seven hours under

---

[53]Doc. 198, citing *Thomas v. Cate,* 715 F.Supp.2d 1012, 1049 (E.D. Cal. 2010)(citations omitted). *See also Arnold Agency v. West Virginia Lottery Commission*, 526 S.E.2d 814, 829 (Va. Ct. App. 1999); and *Horne v. School Board of Miami-Dade County*, 901 So.2d 238, 240 (Ct. Ap. Fl. 2005).

Rule 30(d)(1), or even less if ordered by the court. This issue is now moot because Governor Rounds is now former Governor Rounds.

- Fifth, the objective facts can be ascertained through other means which are less burdensome. The record reveals that other depositions have already occurred and that the objective facts are already known from those depositions and from other means. The Tribe and the State are the two parties to the negotiations so by virtue of being parties to the negotiations they necessarily know the objective facts.

## CONCLUSION

Because the Tribe's reason for wishing to depose former Governor Rounds is to inquire into subjective matters not relevant to judging the State's good faith, and because application of the test about allowing a deposition of a high ranking government official comes down on the side of not allowing Governor Rounds' deposition,

It is ORDERED that the State's motion to quash the Tribe's notice to take former Governor Rounds' deposition is GRANTED.[54]

It is FURTHER ORDERED that this Order is without prejudice so that the Tribe may move for reconsideration of this Order if the United States Supreme Court timely grants California's pending petition for certiorari and decides that the scope of review should include the subjective motivation of the State as well as objective facts.

Dated this 26th day of January, 2011.

BY THE COURT:

s/John E. Simko

_____

John E. Simko
United States Magistrate Judge

_____

[54]Doc. 197.

13