UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

**FILED**

JUN 2 7 2011

CLERK

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| FLANDREAU SANTEE SIOUX TRIBE,<br>a federally-recognized Indian tribe,<br><br>Plaintiff,<br><br>-vs-<br><br>STATE OF SOUTH DAKOTA;<br>MICHAEL ROUNDS, Governor of the<br>State of South Dakota; SOUTH<br>DAKOTA COMMISSION ON<br>GAMING; LARRY LONG,<br>South Dakota Attorney General,<br><br>Defendants. | CIV. 07-4040<br><br><br><br>MEMORANDUM OPINION<br>AND ORDER |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This suit by the Flandreau Santee Sioux Tribe ("Tribe") against the State of South Dakota ("State") was brought pursuant to the Indian Gaming Regulatory Act ("IGRA"). Pending before the Court are the Tribe's Motion for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c), doc. 210, and the State's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(a), doc. 207. For the following reasons, the motions will be denied.

## BACKGROUND

The Tribe began operating the Royal River Casino in Flandreau, South Dakota, pursuant to a Tribal State Gaming Compact negotiated with the State in 1990 which permitted 250 slot machines at the Tribe's casino. Under the last Tribal State Gaming Compact executed on December 27, 1999, the Tribe still could not operate more than 250 slot machines on the reservation. The Tribe seeks to eliminate the limit on the number of slot machines and wants to extend the term of the compact for 20 years. The parties began negotiating a new compact in May of 2005, with negotiation sessions held on six occasions between December 30, 2005, and January 11, 2007. The Tribe brought this

action for declaratory and injunctive relief, alleging that the State has violated various provisions of the IGRA by failing to negotiate in good faith with the Tribe for purposes of entering into a Tribal-State compact for conducting class III gaming on the Tribe's reservation.[1]  The Tribe's state and federal equal protection claims were dismissed by the Court.

The Tribe moves the Court for entry of judgment in its favor and requests an order directing the parties to conclude a Tribal-State Compact within a sixty (60) day period pursuant to 25 U.S.C. § 2710(d)(7)(b)(iii) and (iv).  In the alternative, the Tribe requests an order finding that it has made a prima facie showing that the State did not respond to the Tribe's request to negotiate a Tribal-State Compact in good faith and, thus, the Tribe asks that the Court order that the burden of proof is on the State to prove that it has negotiated in good faith in accordance with 25 U.S.C. § 2710(d)(7)(B)(ii).

The State moves for summary judgment, asserting the Tribe will not be able to make a prima facie case that the State failed to conduct negotiations for a gaming compact with the Tribe in good faith.  The State asserts that even if a prima facie case was made, the undisputed facts prove that it negotiated in good faith as a matter of law.

## DISCUSSION

A motion for judgment on the pleadings under Rule 12(c) is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).  All facts pleaded by the non-moving party are taken as true. *McCormack v. Citibank, N.A.*, 979 F.2d 643, 646 (8th Cir. 1992).  "Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law." *Faibisch v. University of Minnesota*, 304 F.3d. 797, 803 (8th Cir. 2002).

---

[1]The IGRA grants jurisdiction to the district courts over "any cause of action initiated by an Indian Tribe arising from the failure of a State to enter into" compact negotiations or to negotiate in good faith. *See* 25 U.S.C. § 2710(d)(6)(B)(I).

As a result of the State's motion for summary judgment, both parties were given an opportunity to present all material pertinent to the motions at issue here, and both parties refer to exhibits outside the pleadings. When a court considers matters outside the pleadings, a motion for judgment on the pleadings "must be treated as one for summary judgment." Fed.R.Civ.P. 12(d). Because this Court is considering matters outside the pleadings, it will treat the Tribe's motion for judgment on the pleadings as a motion for summary judgment.

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the Court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(c)(1); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations of its pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(c)(1); *Anderson*, 477 U.S. at 257; *City of Mt. Pleasant v. Associated Elec. Coop., Inc.,* 838 F.2d 268, 273-74 (8th Cir. 1988).

According to the Tribe, the number of authorized gaming devices for its casino is the single most important issue subject to negotiation in its Compact with the State, yet the State refused to negotiate any increase from the 250 slot machines approved decades ago. During negotiations, the State continually asserted that increasing the number of machines would violate South Dakota's public policy of "limited" gaming. Pointing to the dramatic increase in the number of slot machines in Deadwood and video lottery terminals throughout South Dakota, the Tribe argues that the State's "limited gaming" stance is a subterfuge to protect non-Indian State-licensed gaming enterprises from competition with the Tribe. The Tribe contends the State's refusal to present any counter-proposal and its rejection of every one of the Tribe's proposals concerning the number of slot machines is

3

evidence that the State did not negotiate in good faith. The State says that it was waiting for concessions from the Tribe on civil and criminal jurisdiction over gaming matters in exchange for additional machines for the Tribe.

With the "good faith standard as the legal barometer," Congress stated, the tribe "must show a prima facie case, [and] after doing so the burden will shift to the State to prove that it did act in good faith." Indian Gaming Regulatory Act, S. Rep. No. 100-446 at 26 (1988) as reprinted in 1988 U.S.C.C.A.N. 3071, 1998 WL 169811, at *14. The Court must first determine what it means for the State to negotiate in good faith. Good faith is not defined in the IGRA. The IGRA's legislative history provides courts with the following guidance:

> The Committee notes that it is States not tribes that have crucial information in their possession that will prove or disprove tribal allegations of failure to act in good faith. Furthermore, the bill provides that the court, in making its determination, may include issues of a very general nature and, and [sic] [of] course, trusts that courts will interpret any ambiguities on these issues in a manner that will be most favorable to tribal interests consistent with the legal standard used by courts for over 150 years in deciding cases involving Indian tribes.

*Id.*; *see In re Indian Gaming and Related Cases*, 331 F.3d 1094, 1108 (9th Cir. 2003).

Relying on the Ninth Circuit's decision in *Rincon Band of Luiseno Mission Indians of Rincon Reservation v. Schwarzenegger*, 602 F.3d 1019 (9th Cir. 2010), the State argues that good faith is to be evaluated objectively. Although the Ninth Circuit in *Rincon* held that good faith should be evaluated objectively based on the record of negotiations, its holding was made under very different circumstances from those in the present case. In *Rincon*, the State of California demanded that the Tribe pay a tax. *See id.* at 1042. The Ninth Circuit interpreted the plain language of the IGRA as prohibiting states from imposing taxes on Indian tribes. Under the IGRA, a court must consider a demand for a tax to be evidence of bad faith. *See* 25 U.S.C. § 2701(d)(7)(B)(iii)(II). The State argued that it believed its demand was legal, and that this subjective belief rebutted the inference of bad faith which its improper demand created. The Ninth Circuit held that the State's subjective belief did not rebut the inference of bad faith created by its objectively improper demand, noting that the IGRA expressly condemns a demand for a tax. *Rincon's* objective test for good faith as applied

4

in that case was in line with Congress' decision to expressly prohibit taxation of the tribes by the states.

In the present case, the State did not violate an express provision of the IGRA, but its behavior (refusal to negotiate for additional gaming devices) still may violate its duty to negotiate in good faith. Under these circumstances, the Court believes that a more subjective test is necessary for a good faith determination.[2]

The National Labor Relations Act ("NLRA") mandates employers and employees to negotiate labor agreements in good faith. The meaning of good faith negotiations in the area of labor law has been well-developed over the course of many years, and it is a helpful model for developing the meaning of good faith negotiations under the IGRA. As Justice Frankfurter recognized when considering the NLRA good faith bargaining requirements: Good faith "means more than merely going through the motions of negotiating; it is inconsistent with a predetermined resolve not to budge from an initial position." *NLRB v. Truitt Mfg. Co.*, 351 U.S. 149, 155 (1956) (Frankfurter, J., concurring in part and dissenting in part). Courts have recognized that what is known as "surface bargaining" -- going through the motions of negotiating, without any real intent to reach an agreement -- does not constitute good faith bargaining. *K-Mart Corp. v. NLRB*, 626 F.2d 704, 706 (9th Cir. 1980). Good faith "presupposes a desire to reach ultimate agreement" and not simply "an attitude of take it or leave it." *NLRB v. Ins. Agents; International Union*, 361 U.S. 477, 485 (1960). This more subjective test for good faith allows courts to examine a wide range of behavior, which the Court finds is necessary to determine good faith in the present case.

The Court must decide if, on this record, there is a disputed fact regarding whether the State negotiated in good faith. The State has offered some explanations for its failure to offer additional gaming devices for the Tribe during negotiations. The State asserts that the State of South Dakota

---

[2]In a case decided prior to *Rincon*, the Ninth Circuit said that "IGRA's legislative history also makes clear that the good faith inquiry is nuanced and fact-specific, and is not amenable to bright-line rules". *In re Indian Gaming Related Cases*, 331 F.3d at 1113.

has a policy of limited gaming. The State also contends that it wanted concessions from the Tribe on civil and criminal jurisdiction before offering additional machines.[3] While the State may convince a trier of fact that this is true and that the State was willing to negotiate an increase in gaming devices, viewing the facts in the light most favorable to the Tribe, a trier of fact could find the State had no intention of negotiating on this important subject. *See, e.g., NLRB v. Montgomery Ward & Co.*, 133 F.2d 676, 687 (9th Cir. 1943) (refusal to submit counter-proposals is some evidence of the employer's lack of good faith negotiations with the union); *NLRB v. George P. Pilling & Son Co.*, 119 F.2d 32, 37 (3d Cir. 1941) ("Agreement by way of compromise cannot be expected unless the one rejecting a claim or demand is willing to make counter-suggestion or proposal. And, where that is expressly invited but is refused, in such circumstances the refusal may go to support a want of good faith, and, hence, a refusal to bargain."). Although the record before the Court suggests an unwillingness to negotiate in good faith on the part of the State, it is not appropriate to attribute bad motives to the State at the summary judgment stage. The Court believes that the appropriate course is to resolve these issues at trial. For all of these reasons,

IT IS ORDERED:

1.      That Defendants' Motion for Summary Judgment, doc. 207, is denied; and

2.      That Plaintiff's Motion for Judgment on the Pleadings, doc. 210, is denied.

Dated this _27th_ day of June, 2011.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: _Summer Wahpan_
(SEAL)          DEPUTY

_____

[3]IGRA's legislative history states that in enacting IGRA, Congress did not intend "that compacts be used as a subterfuge for imposing State jurisdiction on tribal lands," Indian Gaming Regulatory Act, S. Rep. No. 100-446 at 26 (1988) as reprinted in 1988 U.S.C.C.A.N. 3071, 1998 WL 169811, at *14, and that the compact requirement "not be used as a justification by a State for excluding Indian tribes from such gaming or for the protection of other State-licensed gaming enterprises from free market competition with Indian tribes." *Id.* at *13.